[No. C026767. Third Dist. Jan. 28, 1999.]

GOLDEN DAY SCHOOLS, INC., Plaintiff and Appellant, v.
DEPARTMENT OF EDUCATION, Defendant and Respondent.

682

## COUNSEL

Alcala & Velez and Carlos M. Alcala for Plaintiff and Appellant.

Michael E. Hersher and Allan H. Keown for Defendant and Respondent.

## OPINION

**PUGLIA, J.**[*]—Education Code section 8448 requires an organization having a "direct service contract" with the state for the operation of child care and development programs and related support services annually to prepare a single independent "financial and compliance audit" of its operations. If the audit meets generally accepted auditing standards, it shall be relied upon by the state Department of Education (the Department) and "any additional audit work shall build upon the work already done." (Ed. Code, § 8448, subd. (i)(1); further statutory references to sections of an undesignated code are to the Education Code.)

In this declaratory relief action, plaintiff Golden Day Schools, Inc., sought a determination of its right, following preparation and submission of an audit pursuant to section 8448, to prohibit the Department from inspecting plaintiff's business records. The trial court concluded section 8448 does not supersede powers granted to the Department elsewhere in the Education Code to audit and inspect the records of private entities contracting with the state. The court entered judgment declaring the Department's right to inspect

---

[*]Retired Presiding Justice, Court of Appeal, Third District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

plaintiff's records. We agree section 8448 is not a shield behind which an agency receiving Department funding may avoid Department scrutiny. We shall affirm.

## I

This appeal is from a final judgment entered following an order granting the Department's motion for judgment on the pleadings without leave to amend. We therefore accept as true all allegations in the complaint as well as matters properly subject to judicial notice. (*American Airlines, Inc.* v. *County of San Mateo* (1996) 12 Cal.4th 1110, 1118 [51 Cal.Rptr.2d 251, 912 P.2d 1198].)[1]

Under the Child Care and Development Services Act (§ 8200 et seq.), the Department is the designated agency responsible for the "promotion, development, and provision of care of children in the absence of their parents during the workday or while engaged in other activities which require assistance of a third party or parties." (§ 8206.) In furtherance of this charge, the Department contracts with public or private agencies which provide "child care and development services" for children from infancy to age 14. (§§ 8203.5, 8208, subd. (h), 8262.) Such services include "direct care and supervision, instructional activities, resource and referral programs, and alternative payment arrangements." (§ 8208, subd. (i).)

Plaintiff is a California nonprofit corporation which has operated "child development and pre-school programs, pre-school and school age nutrition programs and 'latch key' child care programs" for the past 31 years. Plaintiff has been funded by the Department to conduct these programs for the past 27 years. In 1996, plaintiff received $2,888,155 from the Department.

Pursuant to the "funding terms and conditions of [its] contract with [the Department]," plaintiff submits annual audit reports prepared in accordance with generally accepted auditing standards which cover plaintiff's use of both public and private funds for its programs. The Department has not yet approved the audits submitted by plaintiff for the fiscal years ending in 1993, 1994, and 1995. On August 30, 1996, the Department billed plaintiff

---

[1]In support of its motion for judgment on the pleadings, the Department submitted two requests for judicial notice. Plaintiff submitted one request. The record contains no express ruling on these matters. In its tentative ruling granting the motion for judgment on the pleadings, the trial court indicated the issues before the court on the allegations of the complaint "and matters judicially noticed" are a matter of law. For purposes of appeal, we shall assume the court granted judicial notice as to those matters properly subject to such notice which are necessary for the findings ultimately made by the court.

for alleged overpayments made by the Department during each of those years in the amounts of $248,543, $349,372, and $356,651 respectively. When plaintiff requested administrative review, the Department withdrew its demand for repayment, explaining it needed more time to consider the audits.

On November 4, 1996, the Department notified plaintiff it intended to inspect plaintiff's financial and compliance records for plaintiff's "Child Development Program," "Child Care Food Program," "School Nutrition Program," United States Department of Agriculture "Donated Food Commodities [Program]," and "privately-funded General Programs" for the fiscal year ending in 1995. The notice described the scope of the records review to include plaintiff's "financial records, claiming methods, prepayments, cost allocations, administrative costs, and CPA's working papers for the program years ended June 30, 1993, 1994, and 1995."

Plaintiff, through its legal representative, wrote the Department disputing the Department's right to inspect plaintiff's records. Plaintiff explained it would not permit the proposed inspection because, under section 8448, the Department must either accept the audits provided by plaintiff or reject them, but may not perform its own audits. Plaintiff requested an explanation of the Department's legal authority for the proposed inspection.

The Department responded it could not determine the validity of plaintiff's audits without reviewing plaintiff's records. The Department cited as legal authority section 8448, federal regulations, and specific terms of the contracts between the Department and plaintiff. Plaintiff persisted in its refusal to permit access to its records, explaining that while plaintiff intends to honor its contractual obligations, the Department's request "is not merely to 'look' or 'inspect' books and records[]" but "to be allowed to conduct a complete independent audit" of plaintiff.

The Department threatened that if plaintiff refused to permit access to its records, the Department might (1) reject the audits for 1993, 1994, and 1995, (2) charge plaintiff for the full amount of funds received from the Department during those three years, and (3) withhold payments for the current year. Plaintiff again explained the Department's only recourse is to accept the proferred audits, if performed according to generally accepted auditing standards, or reject them, giving plaintiff a right to administrative review. Plaintiff indicated a records inspection was unnecessary because the determination whether an audit is performed according to generally accepted

auditing standards can be made by examining only the audit. Plaintiff accused the Department of asserting a need to examine its records as a pretext to circumvent section 8448.

Plaintiff commenced this declaratory relief action on December 6, 1996, seeking a declaration of the parties' rights as well as an injunction prohibiting the Department from conducting an independent audit of plaintiff's books and denying plaintiff continued funding. The Department moved for judgment on the pleadings, contending it has the right to inspect plaintiff's records pursuant to sections 33420 and 33421, section 8448, subdivision (i)(3), state and federal regulations, and the terms of the individual contracts between the Department and plaintiff. Plaintiff filed opposition and a motion for preliminary injunction contending, among other things, section 8448 supersedes sections 33420 and 33421 and does not permit a separate audit by the Department.

On February 20, 1997, the trial court issued a minute order granting the Department's motion. The court explained section 8448 "is not susceptible to the all-preclusive interpretation which plaintiff seeks to give it. The statute undoubtedly was intended to set forth auditing requirements deemed sufficient to satisfy federal requirements; but neither on its face nor in context does it preclude [the Department]'s authority to review plaintiff's records incidental to [the Department]'s determination as to how best to proceed regarding the pending audits." The court thereafter entered judgment declaring, among other things, the Department's right to inspect all of plaintiff's business records pursuant to sections 33420 and 33421, federal regulations, and the individual contracts between plaintiff and the Department.[2]

---

[2]The judgment reads in relevant part:

"It Is Ordered And Adjudged that plaintiff take nothing by its complaint, that [the Department] recover its costs, and that the following rights of [the Department] be declared:

"1. Education Code sections 33420 and 33421 are valid and were not repealed by the enactment of Education Code section 8448 and, taken together, give [the Department] an unqualified right to inspect all of plaintiff's business records;

"2. Education Code section 8448 does not interfere with [the Department]'s unqualified right to inspect all of plaintiff's business records;

"3. Education Code section 8448 sets forth the auditing requirements for direct service child development providers which are separate and distinct from the provisions of Education Code sections 33420 and 33421;

"4. The funding terms and conditions attached to all of [the Department]'s state child development contracts implement Education Code sections 33420, 33421, and 8447(b) and constitute a valid agreement between plaintiff and [the Department] which gives [the

## II

Plaintiff contends the trial court erred in concluding section 8448 does not override all other legal and contractual authority for the Department's inspection of plaintiff's records. In particular, plaintiff argues section 8448 conflicts with sections 33420 and 33421 and, as the more specific provision, section 8448 controls. (See *Lake* v. *Reed* (1997) 16 Cal.4th 448, 464 [65 Cal.Rptr.2d 860, 940 P.2d 311].) Plaintiff further contends the federal regulations and the contracts between itself and the Department do not permit the Department to perform multiple audits of plaintiff's operations. Finally, plaintiff claims principles of laches and estoppel preclude the Department from proceeding with its proposed course of action.

Section 33420 reads in relevant part:

"(a) The Superintendent of Public Instruction, in cooperation with the State Department of Finance and the Auditor General, shall, on or before July 1, 1980, provide for a plan for independent audits of state and federal funds allocated to private agencies that are under contract with the State Department of Education for the provision of educational services.

"For the purpose of this article, 'educational services' includes, but is not limited to, child nutrition and child development services.

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"(b) Effective July 1, 1980, the State Department of Education, as a condition to any contract with a private agency for the provision of educational services, shall require a periodic audit of state and federal funds to be conducted by departmental staff auditors or a certified public accountant or public accountant who is licensed by the California State Board of Accountancy. . . ."

Department] an enforceable, contractually-based state right to inspect all of plaintiff's business records during normal business hours;

"5. Federal regulations, specifically 7 CFR sections 3015.24(b) and 226.15(e)(12), give [the Department] an unqualified federal right to inspect all of plaintiff's business records;

"6. The July 1994 Agreement which plaintiff signed, and which has been extended in subsequent years, fully and fairly implements federal law and gives [the Department] a valid contractually-based federal right to inspect all of plaintiff's business records.

"7. [The Department] is free to proceed against plaintiff by adverse administrative action, if any is warranted, after [the Department]'s inspection of plaintiff's business records is complete;

"8. Plaintiff will have clear and adequate administrative and judicial review opportunities if [the Department] does initiate adverse administrative action against plaintiff; and

"9. Neither laches nor estoppel is applicable to this litigation."

Section 33421 reads: "Every private agency which receives state funds which may be audited pursuant to Section 33420 shall, at the request of the Superintendent of Public Instruction, make all records pertaining to its state-funded programs available to the Department of Education during regular business hours. . . ."

▆▆▆ Plaintiff does not dispute the foregoing provisions grant the Department a general right to inspect the records of agencies which contract with the Department. Rather, plaintiff contends this general right is limited by section 8448. Subdivisions (g) and (i) of section 8448 read in relevant part:

"(g) Annually, there shall be a single independent financial and compliance audit[3] of organizations that contract with the state under a direct service contract.[4] Any such audit shall include an evaluation of the accounting and control systems of the direct service contractor and of the activities by the contractor to comply with the financial requirements of direct service contracts received by the contractor from the state agency. . . . Audits carried out pursuant to this section shall be audits of the contractor rather than audits of individual contracts or programs. . . .

"The organization receiving funds from the state shall be responsible for obtaining the required financial and compliance audits of the organization . . . . The audits shall be made by independent auditors in accordance with generally accepted auditing standards. . . . A copy of the required audit will be filed with the State Department of Education upon its completion. . . ."

---

[3] A "[f]inancial and compliance audit" is defined in section 8448, subdivision (a) as a "systematic review or appraisal to determine each of the following: [¶] (1) Whether the financial statements of an audited organization fairly present the financial position and the results of financial operations in accordance with generally accepted accounting principles. [¶] (2) Whether the organization has complied with laws and regulations that may have a material effect upon the financial statements."

[4] A " '[d]irect service contract' " is defined as "any contract with any public or private entity for child care and development programs, resource and referral programs, and programs contracting to provide support services as defined in Section 8208." (§ 8448, subd. (e).) " 'Child care and development programs' " are "programs that offer a full range of services for children from infancy to 14 years of age, for any part of a day, by a public or private agency, in centers and family child care homes. . . ." (§ 8208, subd. (h).) " 'Resource and referral programs' " are "programs that provide information to parents, including referrals and coordination of community resources for parents and public or private providers of care. Services frequently include, but are not limited to: technical assistance for providers, toy-lending libraries, equipment-lending libraries, toy- and equipment-lending libraries, staff development programs, health and nutrition education, and referrals to social services." (§ 8208, subd. (w).) " 'Support services' " are "services which, when combined with child care and development services, help promote the healthy physical, mental, social, and emotional growth of children . . . ." (§ 8208, subd. (dd).)

"(i)(1) Nothing in this article limits the authority of the State Department of Education to make audits of direct service contracts. However, if independent audits arranged for by direct service contractors meet generally accepted auditing standards, the State Department of Education shall rely on those audits and any additional audit work shall build upon the work already done.

"(2) Nothing in this article precludes the state from conducting, or contracting for the conduct of, contract performance audits which are not financial and compliance audits.

"(3) Nothing in this article limits the state's responsibility or authority to enforce state law or regulations, procedures, or reporting requirements arising pursuant thereto. . . ."

Under section 8448, subdivision (i)(1), if an audit prepared in accordance with section 8448, subdivision (g) meets "generally accepted auditing standards," it shall be relied upon by the Department "and any additional audit work shall build upon the work already done." Plaintiff contends this means the Department may not "go 'underneath' " the audit prepared by the organization to perform its own audit. The only question for the Department, plaintiff argues, is whether the audit meets generally accepted auditing standards. According to plaintiff, this question can be answered by review of the audit alone.

■ The issue presented here is one of statutory interpretation. In such matters, our fundamental concern is with legislative intent. (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) We determine such intent by looking first to the words of the enactment, giving them their usual and ordinary meaning. (*Trope* v. *Katz* (1995) 11 Cal.4th 274, 280 [45 Cal.Rptr.2d 241, 902 P.2d 259].) Only when the statutory language is not clear do we resort to other indicia of legislative intent.

■ Section 8448, subdivision (i)(1) states nothing in section 8448 limits the Department's authority to audit direct service contracts. Similarly, subdivision (i)(2) says section 8448 does not preclude the Department from conducting "contract performance audits." However, where a financial and compliance audit prepared by the contractor meets generally accepted auditing standards, the Department shall rely on it and "any additional audit work shall build upon the work already done." In other words, the Department is free to perform contract-specific audits as long as they build upon financial and compliance audits prepared on behalf of the contractor which meet generally accepted auditing standards.

Nothing in these provisions limits the Department's right, as defined in sections 33420 and 33421, to inspect a contractor's records. Such record review would be necessary to perform contract-specific audits, whether or not such audits build upon work already done. Section 8448, subdivision (i)(2) says the Department is not prohibited from conducting contract performance audits "which are not financial and compliance audits." This suggests the only activity section 8448 precludes is a "financial and compliance audit," i.e., "a systematic review or appraisal" designed to determine if the organization's financial statements accurately reflect its overall financial position. (§ 8448, subd. (a).)

 "[E]very statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect. [Citation.]" (*County of Fresno* v. *Clovis Unified School Dist.* (1988) 204 Cal.App.3d 417, 426 [251 Cal.Rptr. 170].) "It is presumed that when the Legislature adopts legislation it is aware of its prior enactments. . . . Unless the Legislature expresses an intent to abrogate an earlier enactment, later legislation is to be interpreted to avoid conflict with the earlier. . . . 'Generally, it will not be presumed the Legislature intended to repeal, in whole or in part, existing statutes by a later enacted statute in the absence of an express declaration to that effect.' . . . The presumption is therefore 'against repeal by implication where express terms are not used and the statutes are not irreconcilable.' . . ." (*County of Tulare* v. *Campbell* (1996) 50 Cal.App.4th 847, 853 [57 Cal.Rptr.2d 902], citations omitted.)

 If in fact the Department is prohibited by section 8448 from conducting a comprehensive audit of a contractor's operations, that does not mean the Department is also precluded from inspecting the contractor's records. Plaintiff has attempted to recast a simple records inspection, as the Department sought and the trial court permitted, into a full-blown audit of plaintiff's operations. However, the two are not the same. A records review may be for a host of reasons, including a contract compliance audit or a determination whether an audit submitted by the contractor meets generally accepted auditing standards. In its demand for inspection, the Department indicated it intended to review records relating to plaintiff's individual programs. The Department also explained it could not determine if the audits submitted by plaintiff met generally accepted auditing standards without inspecting plaintiff's records. We will not presume that if the Department is given access to plaintiff's records it will use them to perform a financial and compliance audit.

Plaintiff contends this restrictive interpretation of section 8448 is inconsistent with its legislative history. A Senate Democratic Caucus committee

report on Assembly Bill No. 3750, which added section 8448 (Stats. 1984, ch. 1440, § 4, pp. 5044-5046), specifies the bill would require "that the contractors, not individual programs or contracts, be subject to a single independent audit." (See Sen. Conf. Com., Rep. No. 018165 on Assem. Bill No. 3750 (1983-1984 Reg. Sess.) Aug. 29, 1984, p. 2.) A report by the Assembly Committee on Human Services indicates one of the problems sought to be resolved by Assembly Bill No. 3750 is "multiple audits adding costs without improving accountability." (See Assem. Com. on Human Service, Rep. on Assem. Bill No. 3750 (1983-1984 Reg. Sess.) Apr. 3, 1984, p. 2.) A Senate Committee on Education report reiterates that one purpose of Assembly Bill No. 3750 was to require "that the contractors, not individual programs or contracts, be subject to a single independent audit, a copy of which must be filed with [the Department]." (See Sen. Com. on Education, Rep. on Assem. Bill No. 3750 (1983-1984 Reg. Sess.) June 27, 1984, p. 2.)[5] The elimination of an obligation that contractors prepare multiple audits does not affect the right of the Department to inspect the providers' records. The trial court correctly concluded section 8448 does not supplant the Department's right under sections 33420 and 33421 to review plaintiff's records.

### III

■ Plaintiff contends the Department should be estopped from asserting sections 33420 and 33421 as the basis for its right to inspect plaintiff's records because, in originally proposing such inspection, the Department relied solely on its right under section 8448 to determine if the audits submitted by plaintiff meet generally accepted auditing standards. This argument is specious.

■ The essence of an estoppel is that one has, by false statements or conduct, led another to do that which he would not otherwise have done and

---

[5]In support of its motion in the trial court for reconsideration, plaintiff submitted a declaration from State Senator Diane Watson. Senator Watson indicated she was one of the senators who served on a conference committee which recommended Assembly Bill No. 3750 for passage. According to Senator Watson, "Assembly Bill 3750 was introduced and enacted at the urging of The United Way to reform administration of child development programs and to address the Multiple Audit problems facing state funded child development agencies by the State Department of Education. [¶] . . . Education Code Section 8448 makes it clear that if a State funded child development agency submits to the State Department of Education a certified audit conducted by a California Licensed Certified Public Accountant, and the audit is conducted in accordance with generally accepted auditing standards as defined in section 8448 of the code then the department '*Shall*' rely on and accept such audit." (Italics in original.)

As the trial court correctly concluded, this declaration is "not properly considered" on the issue of legislative intent. At any rate, it does not suggest the intent of the Legislature was other than to eliminate the requirement that service providers prepare multiple audits.

as a result the other has suffered injury. (*In re Lisa R.* (1975) 13 Cal.3d 636, 645 [119 Cal.Rptr. 475, 532 P.2d 123, 90 A.L.R.3d 1017].) The elements of an estoppel claim are: "(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245].) Where the defendant is a government entity, a fifth element requires that the injury to the plaintiff's personal interest if the government is not estopped outweighs the injury to the public interest if the government is estopped. (*Stewart* v. *City of Pismo Beach* (1995) 35 Cal.App.4th 1600, 1606 [42 Cal.Rptr.2d 382].)

 Assuming plaintiff could amend its complaint to allege the Department knew the basis for its right to review plaintiff's records was sections 33420 and 33421, but represented to plaintiff the basis was section 8448 and plaintiff did not know the true nature of the Department's right, there is no conceivable way plaintiff could plausibly allege it relied on such a misrepresentation to its detriment. Plaintiff does not even attempt to suggest how it could do so. Without detrimental reliance, there can be no estoppel.

## IV

The trial court cited two federal regulations as additional authority for the Department's inspection of plaintiff's records. Title 7 Code of Federal Regulations section 3015.24(b) (1997) reads: "*Records of subrecipients.* [The United States Department of Agriculture (USDA)] and the Comptroller General of the United States, and the recipient [i.e. the Department], or any of their authorized representatives, shall have the right of access to any books, documents, papers, or other records of the subrecipient which are pertinent to a specific USDA grant or cooperative agreement, in order to make audit, examination, excerpts, and transcripts." Title 7 Code of Federal Regulations section 226.15(e)(12) (1998) reads: "*Recordkeeping.* Each institution shall establish procedures to collect and maintain all necessary Program records. Such records shall include: [¶] . . . [¶] (12) . . . documentation of nonprofit food service to ensure that all Program reimbursement funds are used: (i) Solely for the conduct of the food service operation; or (ii) to improve such food service operations, principally for the benefit of the enrolled participants."[6]

Plaintiff contends these provisions only authorize inspection of records relating to compliance with the federal food programs. The federal regulations grant authority to inspect records "which are pertinent to a specific

---

[6]On appeal, plaintiff contests the trial court's reliance on title 7 Code of Federal Regulations section 3015.75(b) (1997). Plaintiff argues, as it did in the trial court, that the provision

USDA grant or cooperative agreement" (7 C.F.R. § 3015.24(b) (1997)) in order to determine if program funds are used solely for food service operations (7 C.F.R. § 226.15(e)(12) (1998)). Plaintiff argues the Department is attempting to bootstrap these limited provisions into a general records review authority.[7]

Although we agree the federal regulations provide only a limited records review authority, there is nothing in the complaint or matters subject to judicial notice which suggests the Department intends any broader review in connection with its determination of whether plaintiff is in compliance with the federal food programs. We again will not presume that if the Department is given access to plaintiff's records it will go beyond what it may lawfully do. As previously explained, the Department has authority under sections 33420 and 33421 to review all of plaintiff's records.

## V

The trial court found "[t]he July 1994 Agreement which plaintiff signed, and which has been extended in subsequent years, fully and fairly implements federal law and gives [the Department] a valid contractually-based federal right to inspect all of plaintiff's business records[.]" Plaintiff contends subdivision (K) of the 1994 agreement does not give the Department "the right to perform financial multiple audits of books and records and its entire organization."[8] However, plaintiff provides no argument in this regard. Instead, plaintiff states the agreement between the Department and the

applies only to audits by state, local or Indian tribal governments. This is a red herring. After plaintiff asserted this contention in the trial court, the Department conceded plaintiff's argument was well taken. The Department cited title 7 Code of Federal Regulations section 226.15(e)(12) (1998) as alternative authority for its position. In ruling for the Department, the trial court relied on the latter provision rather than title 7 Code of Federal Regulations section 3015.75(b). The question whether title 7 Code of Federal Regulations section 3015.75(b) provides a basis for the Department's records review is not before us.

[7]Plaintiff also contends the federal regulations do not give the Department's Office of External Audits inspection authority because such inspection has historically been conducted by program consultants of the Child Development and Child Nutrition Programs. This argument is without merit. The allocation of work within the Department is a matter of internal administration. The question here is not which group within the Department may conduct an inspection but whether and to what extent the Department has power to do so in the first place. It is up to the Department to allocate its workload.

[8]We have searched the record in vain for a copy of the purported July 5, 1994, agreement. In its brief on appeal, the Department quotes the language of subdivision (K) of that agreement. As support, the Department cites its trial court brief, in which the Department also quoted the language of the subdivision. According to the Department, subdivision (K) reads: "Provide access to all approved sites listed on the Schedule A and make available all accounts and records pertaining to the program to representatives of the Department . . . ." Plaintiff does not take issue with the Department's recitation of the contract term.

USDA requires that nutrition programs receiving more than $100,000 in federal funds "have an audit performed by an outside licensed Public Accountant, not by [the Department]'s auditors." Plaintiff insists it is in compliance with this requirement.

If by the foregoing argument plaintiff means to suggest the Department cannot require more of its contractors than specified in the purported agreement between the Department and USDA, plaintiff is wrong. First, there is no Department-USDA agreement in the record. We are left to guess at its terms. Second, there is no reason in law or logic why the Department and plaintiff may not agree to different terms than specified in the purported Department-USDA agreement.

Because plaintiff does not contend the express terms of the 1994 agreement, standing alone, do not give the Department the power to review plaintiff's records, we have no occasion to consider the issue.

## VI

Plaintiff contends the Department is barred by the equitable doctrine of laches from objecting to the independent audits submitted by plaintiff for the fiscal years ending in 1993, 1994, and 1995. ▮▮▮ Plaintiff further contends the Department effectively waived its right to object to the audits when it withdrew its request for refunds in the face of plaintiff's request for administrative review.[9]

The complaint does not allege laches as a basis for barring the Department from reviewing plaintiff's records. ▮ In a motion for judgment on the pleadings, like a general demurrer, a defendant need only negate the claims asserted by the plaintiff. The motion attacks the sufficiency of the complaint as stated.

▮ Assuming the complaint could be amended to include a claim of laches, and such equitable defense may be used to bar recovery of overpayments by the Department, application of the doctrine requires both unreasonable delay and prejudice. (*Miller* v. *Eisenhower Medical Center* (1980) 27 Cal.3d 614, 624 [166 Cal.Rptr. 826, 614 P.2d 258].) Neither is present here.

[9]Plaintiff also contends that when the Department denied plaintiff an administrative hearing, plaintiff was denied due process and equal protection. However, because this argument is not preceded by an appropriate heading, it is deemed waived. (See *Live Oak Publishing Co.* v. *Cohagan* (1991) 234 Cal.App.3d 1277, 1291 [286 Cal.Rptr. 198].) Furthermore, plaintiff has presented no argument or citation of authority to support this contention. An issue merely raised by a party without any argument or authority is deemed to be without foundation and requires no discussion. (*People* v. *Dougherty* (1982) 138 Cal.App.3d 278, 282 [188 Cal.Rptr. 123].)

The complaint alleges "[the Department] generally runs two to four years behind in clearing . . . audits." The Department initially billed plaintiff for alleged overpayments for fiscal years ending in 1993, 1994, and 1995 in August 1996, within the normal period for the Department's actions. However, this billing was withdrawn and, on November 4, 1996, the Department notified plaintiff of its intent to review plaintiff's records for the 1995 fiscal year. It is this notice which plaintiff rejected and which gave rise to this litigation. At this point, there is no indication the Department is attempting to claim refunds for the 1993 and 1994 fiscal years.

The Department's initial billing notice came in August 1996, little more than a year after the close of the 1995 fiscal year. The Department's request to inspect plaintiff's records came in November 1996. There was no unreasonable delay.

Even if the Department were seeking review of records for the 1993 and 1994 fiscal years, there is no indication plaintiff would be prejudiced by the Department's delay in seeking such review until mid-1996. The only prejudice claimed by plaintiff is the fact it has had to expend limited resources in prosecuting this action rather than pursuing an administrative review and will be forced to divert staff in complying with the Department's request. The fact plaintiff has had to prosecute this action is not the result of any delay by the Department. Presumably, plaintiff would have taken the same approach had the Department's inspection request come immediately upon submission of the independent audits. The same goes for the necessity of diverting staff. There is no indication this cost will be any greater because the request for records was not presented sooner. Laches simply is not an issue.

Nor is waiver an issue. Although the Department withdrew its initial request for reimbursement when plaintiff sought administrative review, the Department explained it was doing so because it needed more time to consider the audits submitted by plaintiff. This hardly suggests the Department was waiving its right to inspect plaintiff's records.

The judgment is affirmed.

Blease, Acting P. J., and Davis, J., concurred.