Filed 10/25/13  Lyons Magnus v. Fujitsu America CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LYONS MAGNUS, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> FUJITSU AMERICA, INC., <br><br> Defendant and Appellant. | F064876 <br><br> (Super. Ct. No. 11CECG03294) <br><br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Mark W. Snauffer, Judge.

Davis Wright Tremaine, Martin L. Fineman and Joseph E. Addiego III for Defendant and Appellant.

Baker Manock & Jensen, John G. Michael, Kenneth J. Price and Andrea M. Upton for Plaintiff and Respondent.

-ooOoo-

Defendant Fujitsu America, Inc. (Fujitsu) appeals from the denial of its petition to compel arbitration of a dispute that arose with plaintiff Lyons Magnus, Inc. (Lyons). Lyons had retained Fujitsu to install and implement "Enterprise Resource Planning" (or ERP) business software produced and sold by SAP America, Inc. (SAP). The software package included a special module known as "Tradespend Management" (Tradespend) developed by Vistex, Inc. (Vistex) for use in SAP's ERP software. During the software implementation process, a controversy arose regarding the proper timing to implement portions of Tradespend. Significant delays and other problems followed, and Lyons eventually filed a complaint in the trial court against Fujitsu, SAP and Vistex alleging various theories of tort and contract liability. Meanwhile, Fujitsu commenced an arbitration proceeding against Lyons only. The contract between Fujitsu and Lyons provided for arbitration of disputes, but SAP and Vistex were not subject to that provision and they were unwilling to arbitrate.

Fujitsu filed a petition to compel Lyons to arbitrate under Code of Civil Procedure section 1281.2.[1] Lyons opposed the petition and also sought to enjoin or stay the arbitration proceedings. Lyons argued that if the arbitration were allowed to proceed in the absence of all of the parties, there was a substantial risk of conflicting rulings. The trial court agreed with Lyons's assessment and denied the petition to compel arbitration based on section 1281.2, subdivision (c). Under that subdivision, a petition may be denied if "[a] party to the arbitration agreement is also a party to a pending court action … with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." Fujitsu argues on appeal that the trial court abused its discretion because, allegedly, conflicting rulings could not possibly have occurred. Fujitsu, however, falls short of demonstrating

---

[1] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

2.

that premise.  Moreover, we conclude the trial court's decision was well within its reasonable discretion under the circumstances.  Accordingly, the order is affirmed.

## FACTS AND PROCEDURAL HISTORY

Fujitsu was a provider of information technology products and services.  Fujitsu was designated by SAP as one of its global technology partners and had collaborated with SAP in installing and customizing SAP software for over three decades.  SAP's software products included ERP software.  The purpose of ERP software was to improve business operations by streamlining existing processes and improving visibility into business operations using a unified suite of software applications that are integrated into existing business software systems.

In 2009, Lyons decided it would update its information technology by obtaining ERP software.  After reviewing the available versions of such software on the market, Lyons decided to purchase ERP software from SAP.  In Lyons's perspective, one feature that set SAP's ERP software apart from others was its inclusion of Tradespend by Vistex.  Tradespend was a special software module that dealt with customer discounts and rebates, which represented an important portion of Lyons's business.

Having decided to purchase SAP's ERP software, it was necessary for Lyons to determine which company should be hired to implement the software.  SAP recommended Fujitsu as a company that had the qualified personnel and experience necessary to implement all aspects of the ERP software.  On August 25, 2009, Lyons and Fujitsu entered into a master agreement for the supply of equipment, software and services (the Master Agreement), pursuant to which Fujitsu was to provide professional technology consulting services to install and implement the SAP ERP software for Lyons.

Since SAP ERP software must be individually tailored to specific business operations and integrated into existing systems, the implementation of the software can be extremely involved and complex.  Fujitsu and Lyons agreed that the implementation

3.

process would occur in accordance with a three-phase schedule set forth in a statement of work, which was an attachment to the Master Agreement. The phases were described as phases 1A, 1B, and 1C. During each phase, only certain software modules or applications were to be implemented at that time, as set forth in the statement of work.

Fujitsu began implementing phase 1A in October 2009, and that phase was successfully completed ahead of schedule. However, difficulties began to arise during the next phase—phase 1B—of the implementation process. There were disagreements over how soon Fujitsu should implement portions of Vistex's Tradespend module. Apparently, Vistex's employees strongly disagreed with Fujitsu's employees on that issue. The disagreements reached a level of discord that Vistex employees allegedly threatened Fujitsu staff while the latter attempted to implement Tradespend. The controversy led to substantial delays and, according to Lyons, other problems or defects were encountered as well.

### Lawsuit in Superior Court

On September 21, 2011, Lyons filed its lawsuit in the trial court naming Fujitsu, SAP and Vistex as defendants. The complaint stated general allegations common to all causes of action, which we briefly summarize here. SAP and Fujitsu expressly represented to Lyons that Fujitsu was qualified and able to provide Lyons with the services needed to successfully implement the SAP ERP, including the Tradespend module developed by Vistex. In reliance on said representations, Lyons entered into the Master Agreement with Fujitsu to implement the SAP ERP software. Allegedly, as soon as Fujitsu sent individuals to Lyons's facility to implement the software, it became apparent that there were problems and Fujitsu was having difficulty completing the implementation of Tradespend. In particular, a conflict allegedly developed in regard to the implementation of Tradespend, resulting in Vistex staff threatening Fujitsu staff and individuals leaving the Lyons's implementation. According to Lyons's complaint, after

4.

substantial delays and other problems persisted, it became apparent to Lyons that Fujitsu was not going to complete the implementation of the software.

Based on these and other allegations, the complaint alleged breach of contract claims against Fujitsu and SAP, including a first cause of action for rescission and a ninth cause of action for breach of contract. The complaint also contained a number of causes of action premised on alleged tortious conduct, including a second cause of action for fraud–intentional misrepresentation against Fujitsu and SAP; a third cause of action for fraud–intentional concealment against Fujitsu and SAP; a fourth cause of action for violation of Business and Professions Code section 17200 against Fujitsu and SAP; a fifth cause of action for negligent misrepresentation against Fujitsu and SAP; a sixth cause of action for conspiracy to defraud against "all" defendants (i.e., Fujitsu, SAP and Vistex); a seventh cause of action for intentional interference with contract against Vistex; and an eighth cause of action for negligent interference with prospective economic relations against Vistex.

### Arbitration Proceedings

In the Master Agreement between Fujitsu and Lyons, it provided that "[a]ny controversy arising out of or relating to this Agreement shall be settled before one arbitrator by binding arbitration in Santa Clara County, California under the auspices of the American Arbitration Association ('AAA') …." On November 29, 2011, Fujitsu initiated arbitration proceedings by filing a demand for arbitration (the Demand) with the AAA.[2] The Demand stated Fujitsu's single cause of action against Lyons for breach of contract. According to the Demand, Lyons failed to pay Fujitsu for a substantial portion of the work it had performed under the Master Agreement. Furthermore, the Demand alleged Lyons began insisting that certain software modules be installed in the second

---

[2] Fujitsu was formally served with Lyons's complaint and summons about one week later, on December 8, 2011.

5.

phase of implementation, even though such work was (allegedly) not scheduled to be done until the last phase in the statement of work. Lyons refused to cooperate with Fujitsu in developing a revised statement of work to provide for such changes or modifications using a formal change-order process. Instead, Lyons simply demanded such changes and then, later, ceased paying Fujitsu. Fujitsu continued to complete phase 1B for approximately two months and offered proposals to accommodate Lyons's changes. When it became apparent that Lyons would not cooperate or pay amounts owed, the contract was terminated. The total amount that Lyons allegedly owed Fujitsu was approximately $1.2 million for services performed on phase 1B of the software implementation.

### *Trial Court Proceedings*

On December 21, 2011, Lyons filed a motion for preliminary injunction to enjoin or stay the arbitration proceedings initiated by Fujitsu. The motion was made on the ground that Lyons's claims against Fujitsu were intertwined with related claims against third parties SAP and Vistex, and it was therefore necessary for all of the claims to be adjudicated together with all of the parties in a single action in the superior court in order to avoid inconsistent findings of fact or law. For this reason, Lyons asked the trial court to enjoin or stay the arbitration proceedings.

On January 9, 2012, Fujitsu filed its petition to compel Lyons to arbitrate before the AAA and to stay the pending litigation under section 1281.2. The petition argued that Lyons should be ordered to arbitrate all disputes between it and Fujitsu in accordance with the agreement to arbitrate set forth in the Master Agreement. Fujitsu further argued that Lyons's claims against third parties SAP and Vistex could be adjudicated afterwards, separately and efficiently, without any risk of conflicting rulings. Both SAP and Vistex filed joinders in Fujitsu's petition to compel arbitration and stay the litigation because they preferred that Fujitsu and Lyons arbitrate in advance of the trial court litigation, since it might help to resolve or simplify the issues in the litigation.

6.

On February 8, 2012, Lyons filed its opposition to the petition to compel arbitration. The opposition reiterated Lyons's position that because its pending lawsuit involved third parties (SAP and Vistex) against whom Lyons asserted causes of action that were related to and intertwined with its dispute against Fujitsu, the only way to avoid the risk of conflicting rulings was to have the entire controversy, including the claims against SAP and Vistex, heard in a single forum in the trial court. Accordingly, under section 1281.2, subdivision (c), Lyons urged the trial court to deny Fujitsu's petition.

Fujitsu's petition to compel arbitration and Lyons's motion to enjoin or stay arbitration were both heard together on February 23, 2012. Following oral argument, the trial court took the petition and motion under submission.

On March 8, 2012, the trial court heard and decided a demurrer filed by SAP to Lyons's complaint. SAP's demurrer to the first cause of action (for rescission) was sustained on the ground that the cause of action was duplicative of the cause of action for breach of contract pled in the complaint. Similarly, SAP's demurrer to the sixth cause of action (for civil conspiracy) was sustained on the ground that civil conspiracy was not an independent cause of action separate from the tort causes of action alleged in the complaint. The trial court did not hold that no basis for conspiracy liability existed, but only that it was not a stand-alone or independent cause of action.

On March 28, 2012, the trial court issued its written order deciding Fujitsu's petition to compel arbitration and Lyons's motion to enjoin or stay the arbitration. The trial court agreed with Lyons's position that there was a risk of inconsistent rulings if the arbitration proceeded and so it denied Fujitsu's petition to compel arbitration and granted Lyons's motion to enjoin arbitration. The trial court relied on the discretion conferred on it by section 1281.2, subdivision (c), to the effect that a court "may refuse to compel arbitration where a controversy affects claims by other parties not bound by the arbitration agreement and arbitration risks conflicting rulings on common issues of law or fact."

7.

In its written order, the trial court summarized a scenario in which conflicting rulings might occur: "Were the case to proceed to arbitration first, Fujitsu could claim that it is not at fault for any of the problems that occurred, and that the fault, if any, lies with SAP and/or Vistex (or others). [Thus], the arbitrator could reasonably conclude that Fujitsu is not responsible, but non-parties SAP and/or Vistex are. [Lyons] receives no award, as SAP and Vistex are non-parties to the arbitration (and have contended explicitly that they are not bound by the arbitrator's findings). [¶] Lyons then proceeds to trial against SAP and/or Vistex, who then 'point the finger' at Fujitsu, which has already been absolved of liability by the arbitrator. The jury agrees that Fujitsu is the liable party, and absolves SAP and Vistex of liability. Lyons winds up with no recovery, due to these inconsistent findings, after two complex proceedings and their associated costs. Undoubtedly, other inconsistent scenarios can be imagined depending upon one's assumptions as to the likely outcomes.[3]"

Following entry of the above order, Fujitsu timely filed its notice of appeal.

## DISCUSSION

### I.      Standard of Review

An order denying a petition to compel arbitration under section 1281.2, subdivision (c), is reviewed for abuse of discretion. (*Lindemann v. Hume* (2012) 204 Cal.App.4th 556, 565 (*Lindemann*).) Under this standard, the trial court's discretionary ruling will not be disturbed unless it "exceed[ed] the bounds of reason." (*Henry v.*

---

**3**      The trial court added, in a footnote: "One could also posit that Fujitsu defeats Lyons'[s] claims against it and largely prevails on its affirmative claims for amounts owed by Lyons in the arbitration; however, the arbitrator apportions some fault to absent parties SAP and/or Vistex. Lyons would then be compelled to pursue its claims against SAP and/or Vistex in a subsequent court trial in order to seek indemnification unavailable in the arbitration forum. The possible inconsistencies inherent in adjudication of two separate proceedings are only limited by one's legal imagination."

8.

*Alcove Investment, Inc*. (1991) 233 Cal.App.3d 94, 101; *Fitzhugh v. Granada Healthcare & Rehabilitation Center, LLC* (2007) 150 Cal.App.4th 469, 475 (*Fitzhugh*).)

## II.     Overview of Section 1281.2, Subdivision (c)

Section 1281.2, subdivision (c), provides that a petition to compel arbitration may be denied if "'[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact.'" In such cases, the trial court may in its discretion refuse to enforce the arbitration agreement "so that all issues between all parties are resolved in the judicial proceeding." (*Metis Development LLC v. Bohacek* (2011) 200 Cal.App.4th 679, 691 (*Metis*) [paraphrasing § 1281.2, subd. (c)].)[4] "'Section 1281.2[, subdivision ](c) addresses the peculiar situation that arises when a controversy also affects claims by or against other parties not bound by the arbitration agreement. The … provision giv[es] the court discretion not to enforce the arbitration agreement under such circumstances—in order to avoid potential inconsistency in outcome as well as duplication of effort ….'" (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 393 [holding the provision comports with policies favoring arbitration under federal law].)

"While there is a strong public policy in favor of arbitration, there is an 'equally compelling argument that the Legislature has also authorized trial courts to refuse enforcement of an arbitration agreement [or stay the arbitration] when, as here, there is a

---

[4]     Several alternatives are available under the statute where the possibility of conflicting rulings is found. The court "(1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding." (§ 1281.2, subd. (c).)

possibility of conflicting rulings.  ([Code Civ. Proc.,] § 1281.2, subd. (c).)' [Citation.]" (*Fitzhugh*, *supra*, 150 Cal.App.4th at p. 475.)  That was precisely what the Legislature intended in enacting subdivision (c) of section 1281.2.  (*Whaley v. Sony Computer Entertainment America, Inc*. (2004) 121 Cal.App.4th 479, 488 (*Whaley*).)  Thus, a contractual right to arbitrate "may have to yield if there is an issue of law or fact common to the arbitration and a pending action or proceeding with a third party and there is a possibility of conflicting rulings thereon." (*Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 348.)

"The issue to be addressed under section 1281.2, subdivision (c), … is not whether inconsistent rulings are inevitable but whether they are *possible* if arbitration is ordered." (*Lindemann*, *supra*, 204 Cal.App.4th at p. 567, italics added.)  An evidentiary showing is not necessary to establish this defense to enforcement of arbitration; the trial court may rely on the allegations in the relevant pleadings to decide whether a possibility of inconsistent rulings would exist.  (*Abaya v. Spanish Ranch I, L.P*. (2010) 189 Cal.App.4th 1490, 1498-1499.)

III.  **No Abuse of Discretion**

A.  **Trial Court Properly Found a Risk of Conflicting Rulings**

In the matter before us, Lyons's pending civil action in the trial court was not limited to the two parties to the arbitration agreement (Lyons and Fujitsu), but included claims against third parties (SAP and Vistex) relating to the same transaction or series of related transactions (the purchase and implementation of SAP ERP software).  Therefore, the application of section 1281.2, subdivision (c), turned on the question of whether there was "a possibility of conflicting rulings on a common issue of law or fact" if the arbitration proceeded.  (§ 1281, subd. (c); see *Metis*, *supra*, 200 Cal.App.4th at p. 691.)

One common issue was whether Fujitsu failed to adequately perform the software implementation services as required under the Master Agreement.  Certainly, it would be relevant to each of the claims, regardless of the forum, whether Fujitsu adequately

10.

performed such services and satisfied its material obligations under that contract. Among other things, the matter of Lyons's damages, or at least the extent of Lyons's damages, if any, would appear to depend in large measure on this issue. Nevertheless, we think a better way of articulating the gist of the common issues would be in terms of causation: That is, what was the *cause*, legally and factually, of the problems and delays in the implementation of the software that led to Lyons's alleged damages? Deciding what persons and conduct caused the alleged events would be a relevant issue in both forums. And the issue could be resolved in a number of ways, as highlighted by the following series of questions: Were the problems and delays (or some portion thereof) caused by inadequate performance by Fujitsu of the software implementation process constituting a breach of contract? Were the problems and delays (or some portion thereof) due to Vistex's alleged interference with Fujitsu's performance? Did the problems and delays occur because SAP and Fujitsu fraudulently represented to Lyons that Fujitsu could adequately perform the required implementation services? Was there a combination of some or all of the above causes? And, as indicated presently below, these overlapping and intertwined issues clearly allow for the possibility of conflicting rulings.

The trial court appears to have analyzed the nature of the common issues in a similar fashion. As noted, in holding there was a possibility for conflicting rulings, the trial court described the following potential scenario: "Were the case to proceed to arbitration first, Fujitsu could claim that it is not at fault for any of the problems that occurred, and that the fault, if any, lies with SAP and/or Vistex (or others). ]Thus], the arbitrator could reasonably conclude that Fujitsu is not responsible, but non-parties SAP and/or Vistex are. [Lyons] receives no award, as SAP and Vistex are non-parties to the arbitration (and have contended explicitly that they are not bound by the arbitrator's findings). [¶] Lyons then proceeds to trial against SAP and/or Vistex, who then 'point the finger' at Fujitsu, which has already been absolved of liability by the arbitrator. The jury agrees that Fujitsu is the liable party, and absolves SAP and Vistex of liability.

11.

Lyons winds up with no recovery, due to these inconsistent findings, after two complex proceedings and their associated costs." Although the word "fault" is perhaps technically inapt, at least to the extent a breach of contract was allegedly concerned, the thrust of the trial court's explanation is correct.

Fujitsu insists that if arbitration were allowed to proceed, the issues would remain distinct from the issues in the court action and that no conflicting rulings would result. We disagree. As discussed above, common issues appear to be so intertwined and interrelated that conflicting rulings are a real possibility, as ably explained in the trial court's order. While there may be scenarios in which this would not occur, the standard is not that conflicting rulings are inevitable, but only that they are possible. (*Lindemann*, *supra*, 204 Cal.App.4th at p. 567.) Moreover, the question before us—as the reviewing court—is whether the trial court's order denying arbitration amounted to a clear abuse of discretion by going beyond the bounds of reason under the circumstances. Fujitsu has failed to demonstrate that such was the case here. In *Lindemann*, where a similar argument was raised, the Court of Appeal stated: "Although the … defendants attempt to portray the issues in this case as discrete and segregable, we cannot say the trial court's contrary conclusion exceeded the bounds of reason." (*Id*. at p. 568.) We, likewise, cannot say on this record that the trial court's decision exceeded the bounds of reason.

Finally, Fujitsu makes the novel argument that because certain appellate cases engaged in (or noted that the trial court engaged in) a thorough or careful factual analysis of the issue of whether or not arbitration should be denied under section 1281.2, subdivision (c) (see, e.g., *Best Interiors, Inc. v. Millie & Severson, Inc*. (2008) 161 Cal.App.4th 1320, 1329-1330; *Whaley*, *supra*, 121 Cal.App.4th at pp. 481-484, 488; *Lindemann*, *supra*, 204 Cal.App.4th at p. 568; *Birl v. Heritage Care, LLC* (2009) 172 Cal.App.4th 1313, 1319), a similarly detailed level of analysis is required on all such motions. Allegedly, the trial court's analysis here did not meet that heightened level of scrutiny or thoroughness. We reject this line of argument for several reasons. First, the

12.

trial court's order indicates the court did undertake a careful and reasoned analysis, and Fujitsu has failed to demonstrate otherwise. Second, to the extent Fujitsu is trying to impose an evidentiary requirement, the argument is misplaced because "courts have routinely relied on the allegations contained in the operative pleading to determine whether there is the possibility of conflicting rulings within the meaning of section 1281.2, subdivision (c)." (*Abaya v. Spanish Ranch I, L.P.*, *supra*, 189 Cal.App.4th at p. 1499.) Third, none of the cases cited by Fujitsu specifically addressed the issue of whether a particular level of detailed analysis was a requirement in such cases. Appellate opinions are not authority for issues that were not considered therein. (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2; *See's Candy Shops, Inc. v. Superior Court* (2012) 210 Cal.App.4th 889, 907.) Fujitsu mistakes or has lost sight of the real issue on appeal, which is whether the trial court abused its discretion on the record before us. As discussed herein, Fujitsu has failed to show that such an abuse of discretion occurred.

##### B. Trial Court's Order Did Not Contravene Policy Favoring Arbitration

Fujitsu contends the trial court's ruling contravened the strong public policy favoring arbitration. (See *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.) Again, we disagree. Although the law indeed favors arbitration, the Legislature has expressed another public policy in section 1281.2, subdivision (c), that arbitration may be denied in those situations where the conditions delineated in that subdivision are found to exist. "While there is a strong public policy in favor of arbitration, there is an 'equally compelling argument that the Legislature has also authorized trial courts to refuse enforcement of an arbitration agreement [or stay the arbitration] when, as here, there is a possibility of conflicting rulings. ([Code Civ. Proc.,] § 1281.2, subd. (c).)' [Citation.]" (*Fitzhugh*, *supra*, 150 Cal.App.4th at p. 475.) That was the case here. Moreover, the Supreme Court has made it clear that a trial court's authority to deny arbitration under section 1281.2, subdivision (c), is consistent with a broad public policy to encourage

13.

arbitration because it avoids the pitfall of potential inconsistent rulings and duplication of effort that might otherwise be thrust upon a party to an arbitration agreement in the peculiar situation described in subdivision (c). (*Cronus Investments, Inc. v. Concierge Services*, *supra*, 35 Cal.4th at p. 393 [holding that § 1281.2, subd. (c), does not conflict with strong policy of federal law to promote contractual arbitration].) For all of these reasons, we reject Fujitsu's contention that the trial court's order violated the public policy favoring arbitration.

### C. Demurrer Ruling Did Not Mandate a Different Result

Fujitsu suggests that because the trial court sustained SAP's demurrer to the sixth cause of action for civil conspiracy, it eliminated any grounds for concluding there were common issues of law or fact. Fujitsu has failed to provide adequate legal discussion and authority to support the argument that conspiracy claims were necessary to finding a common issue; therefore, we treat that perfunctory claim as abandoned. (*People v. Stanley* (1995) 10 Cal.4th 764, 793; *People v. Gionis* (1995) 9 Cal.4th 1196, 1214, fn. 11; *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700; *Golden Day Schools, Inc. v. Department of Education* (1999) 69 Cal.App.4th 681, 695, fn. 9.) In any event, Fujitsu has misinterpreted the effect of the demurrer ruling. On March 8, 2012, three weeks prior to its ruling on the petition to compel arbitration, the trial court heard and decided a demurrer filed by SAP to Lyons's complaint. SAP's demurrer to the sixth cause of action (for civil conspiracy) was sustained without leave on the sole ground that civil conspiracy is not an independent cause of action. That is, conspiracy could not be alleged as though it were a new or additional cause of action distinct from the underlying tort causes of action alleged in the complaint. Contrary to Fujitsu's claim, the trial court did not hold that no basis for conspiracy liability existed under the allegations, but only that it was not an additional or independent cause of action.

14.

**D.     Trial Court's Order and Analysis Were Sufficient**

Fujitsu argues the trial court's statement of decision was insufficient because it did not address each of the alternatives available under section 1281.2, subdivision (c). (See fn. 4, *ante* [stating the options available to the trial court under § 1281.2, subd. (c)].) To support this argument, Fujitsu relies on *Metis*. In *Metis*, the trial court denied a petition to compel arbitration and then refused a timely request to prepare a statement of decision. The trial court's brief written order in that case merely stated the bare conclusion that the petitioner waived its right to arbitrate under section 1281.2, subdivision (a), and that there was a risk of inconsistent rulings under section 1281.2, subdivision (c). No explanation was provided. (*Metis*, *supra*, 200 Cal.App.4th at pp. 685-686, 691-693.) The petitioner appealed and the Court of Appeal held: (1) a statement of decision was required and (2) the trial court's order was inadequate. (*Id*. at pp. 689-693.) As to the order itself, the Court of Appeal lamented, "we are given no idea by the court's order" what the common issues were. (*Id*. at pp. 691-692.) In addition, the Court of Appeal stated that the trial court's order should have indicated why the existence of the potential for conflicting rulings "should lead to the denial of arbitration, rather than one of the other alternatives set forth in the statute." (*Id*. at p. 690.) We believe the latter comment is best understood in light of the complete absence of any contextual information or explanation in the order under consideration there.

In any event, our case is plainly distinguishable from *Metis*. Here, the trial court's order (entitled decision and order after hearing) adequately set forth the legal and factual basis for its ruling (§ 632), including a discussion of the significant potential for conflicting rulings. The order expressly recited the alternatives available under section 1281.2, subdivision (c). It elaborated on why adjudicating the issues in two separate or consecutive proceedings would not be best—i.e., that approach would create a potential for conflicting rulings. Moreover, just before the order stated the conclusion that arbitration was being denied, it quoted with approval the language of a recent case

15.

that had affirmed the denial of arbitration pursuant to section 1281.2, subdivision (c). The quoted language, taken from *Lindemann*, stated in essence that the denial of arbitration in that case was being affirmed because (1) there was a possibility of conflicting rulings if arbitration was ordered and (2) it was reasonable for the trial court to conclude that "the entire case should be resolved in a single litigation." (*Lindemann*, *supra*, 204 Cal.App.4th at p. 568.) The quoted language, set forth where it was in the order's discussion, clearly reflected that the trial court was following that same rationale here. In context and read as a whole, we believe the order adequately reflected that arbitration was being denied (that is, *that* outcome was being selected over the other alternatives) because there was a possibility of conflicting rulings if arbitration was ordered and, further, the joinder of all the parties in a single litigation was a reasonable and appropriate means of avoiding the conflicting rulings and efficiently resolving the entire controversy. Accordingly, Fujitsu's argument that the trial court's order was insufficient is unavailing.[5]

### E. Enjoining the Arbitration

We have held the trial court did not abuse its discretion in denying Fujitsu's petition to compel arbitration. The trial court's order not only denied Fujitsu's petition, it also granted Lyons's concurrent motion for a preliminary injunction to stop Fujitsu's already initiated arbitration proceedings from going forward. Fujitsu argues the trial court did not engage in the traditional balancing of all the equities prior to issuing the preliminary injunction. The argument is misplaced because the proper analysis to be

---

[5]     Additionally, Fujitsu has not shown by citation to the record that it objected to the sufficiency of the statement of decision in the trial court, and there is nothing in the court register to show that any such objection or request for clarification was ever made. Where there is a failure to properly object in the trial court, the matter is waived. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1132, 1138.) We conclude waiver constitutes an alternative basis for rejecting Fujitsu's challenge on this issue.

undertaken by the trial court was under section 1281.2, subdivision (c), which the trial court adequately performed.  The several options in that statute included the denial of a petition to compel arbitration, which in this case functioned as the practical equivalent of stopping the arbitration from going forward.  (See, e.g., *Melchor Investment Co. v. Rolm Systems* (1992) 3 Cal.App.4th 587, 591-592 [order denying a preliminary injunction against arbitration is tantamount to an order compelling arbitration]; *International Film Investors v. Arbitration Tribunal of Directors Guild* (1984) 152 Cal.App.3d 699, 704 ["a judgment denying such petition is the practical equivalent of an order to compel arbitration"].)  Whether or not a separate order enjoining the arbitration was necessary or merely superfluous, Lyons plainly requested that order as a defense to allowing the arbitration commenced by Fujitsu with the AAA from proceeding in light of the problem of conflicting rulings.  (See *Southeast Resource Recovery v. Montenay Intern.* (9th Cir. 1992) 973 F.2d 711, 713 [applying California law, noting that an action for injunction against arbitration is essentially a defense to a petition to compel arbitration].)  The proper analysis, therefore, was pursuant to section 1281.2, subdivision (c).  Fujitsu has failed to show any abuse of discretion or any prejudice in regard to the preliminary injunction.

## DISPOSITION

The order of the trial court is affirmed.  Costs on appeal are awarded to Lyons.

_____
Kane, J.

WE CONCUR:

_____
Wiseman, Acting P.J.

_____
Detjen, J.

17.