Filed 12/5/25  Stallo v. Mount San Jacinto Community College Distrct CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| EMILEE STALLO,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>MOUNT SAN JACINTO COMMUNITY COLLEGE DISTRICT et al.,<br><br>    Defendants and Respondents. | E081215<br><br>(Super.Ct.No. MCC1901667)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Angel M. Bermudez, Judge.  Affirmed.

Law Office of Robert P. Ottilie and Robert P. Ottilie for Plaintiff and Appellant.

Hylton & Associates, Courtney L. Hylton and Ruben Escobedo III for Defendants and Respondents, Mount San Jacinto Community College District and Fantaya Willingham.

Aarvig & Associates, Maria K. Aarvig and Diane K. Huntley for Defendant and Respondent, Fontay Mozga.

1

# I. INTRODUCTION

In 2018, plaintiff and appellant Emilee Stallo enrolled as a student at one of Mount San Jacinto Community College District's (MSJCC) campuses. Plaintiff began receiving direct payments from the federal government in the mail, and she eventually discovered that someone had submitted a FAFSA[1] application with falsified personal information to obtain federal grant money on her behalf. Plaintiff denied any involvement in submitting the falsified FAFSA and returned the money, but she insisted that MSJCC investigate the matter and provide her with a definitive confirmation that her name and reputation had been "cleared."

When MSJCC failed to complete this investigation to plaintiff's satisfaction, plaintiff filed a civil suit generally alleging that employees at MSJCC were engaged in a scheme to misappropriate state and federal funds. In addition to MSJCC, plaintiff named defendants and respondents Fontay Mozga and Fantaya Willingham as participants in the scheme. Plaintiff obtained a jury verdict in her favor on a cause of action for fraud against Mozga and a cause of action for negligence against all defendants, with the jury awarding a total of $250,000 in compensatory damages.

Plaintiff appeals from the judgment, arguing: (1) the trial court erred by sustaining a demurrer to a cause of action seeking a writ of mandate to compel MSJCC to take various steps to comply with provisions of the Family Educational Rights and Privacy Act (FERPA; 20 U.S.C. § 1232(g)); (2) the trial court erred by sustaining a demurrer to

---

[1] Free Application for Federal Student Aid.

her cause of action for violation of civil rights pursuant to Civil Code section 52.1; (3) the jury "erred as a matter of law" when it failed to find MSJCC liable for fraud under a theory of ratification; and (4) the trial court abused its discretion when it denied her requests for permanent injunctions as additional equitable relief.  Additionally, plaintiff seeks reversal of a postjudgment order denying her request for attorney's fees pursuant to Code of Civil Procedure section 1021.5; and contends that we should "strike" language from the trial court's ruling on her request for injunctive relief for "flawed reasoning," irrespective of whether the reversal is warranted.

We conclude that plaintiff has not shown error warranting reversal of the judgment or reversal of the postjudgment order denying her request for attorney's fees. Additionally, in the absence of reversible error, we decline to address plaintiff's claims that the trial court's written rulings contain discrepancies that require correction.

## II.  BACKGROUND

A.  *Allegations of Operative Pleading*

According to the operative complaint,[2] when plaintiff was a high school student, she was recruited to attend MSJCC and play on its basketball team.  During the recruitment period, she developed a good relationship with Mozga, who was MSJCC's basketball coach.  Prior to the start of plaintiff's first semester, Mozga reached out to plaintiff to request access to plaintiff's FAFSA information.  Plaintiff had previously

_____

[2] Plaintiff filed her original complaint and petition for writ of mandate in December 2019.  A first amended complaint was filed in August 2020, and a second amended complaint (SAC) was filed in January 2021.  The second amended complaint is the operative pleading.

completed a FAFSA form as part of a high school class requirement but knew that she did not actually qualify for student aid. However, plaintiff gave her FAFSA information to Mozga believing it was part of the enrollment process at MSJCC.

During her first semester at MSJCC, plaintiff began receiving checks in the mail. She deposited her first two checks after being assured by Mozga that the funds were properly distributed by MSJCC. However, in November 2018, plaintiff's mother received correspondence from the United States Department of Education notifying plaintiff's family to reapply for a Pell Grant.[3] Plaintiff's mother accessed plaintiff's FAFSA account online and discovered that an application with false information had been submitted on plaintiff's behalf. The application bore plaintiff's electronic signature but not that of her parents.

When plaintiff discovered that the checks she was receiving were the result of a falsified FAFSA application, she contacted Mozga as well as Willingham, who was a representative working in MSJCC's financial aid office. Both Mozga and Willingham allegedly encouraged plaintiff to continue accepting and using the financial disbursements. Mozga expressed her belief that this was a mistake on the part of MSJCC's financial aid office. Plaintiff requested that Mozga and Willingham arrange for the return of any improperly disbursed funds and for confirmation in writing that plaintiff

---

[3] "A Pell Grant is a subsidy the United States federal government provides through participating institutions for students with exceptional financial need who have not earned their first bachelor's degree or who are enrolled in certain postbaccalaureate programs." (*People v. Ashford University*, *LLC* (2024) 100 Cal.App.5th 485, 494, fn. 3.)

"was not responsible for the monies or the misrepresentations." However, they took no meaningful efforts to address this request.

Eventually, plaintiff's family contacted the Director of Financial Aid at MSJCC. The director arranged for plaintiff's family to meet with the Dean of Student Services, who accepted plaintiff's repayment of disbursed funds. MSJCC provided a receipt to plaintiff indicating a return of the funds but also informed plaintiff that it could not provide any written confirmation that any money had been "returned" to the federal government. Plaintiff's family then contacted MSJCC's superintendent to report the fraudulent conduct and again request "confirmation that [plaintiff] be cleared and any negative information on this issue be removed" from plaintiff's educational records. However, plaintiff's family received no response.

In addition to sending formal correspondence to MSJCC's superintendent, plaintiff also contacted the United States Department of Education, the United States Attorney's Office, the Riverside County District Attorney's Office, the San Jacinto Police Department, and the California Community College Athletic Association to report the alleged fraud. The complaints submitted to each of these entities were all sent on the same day, and all requested a formal investigation that would definitively absolve plaintiff of all responsibility for any fraudulent activity. However, plaintiff was unable to obtain the resolution her family desired, so she retained counsel and filed suit.

Based upon these allegations, plaintiff purported to state six causes of action: (1) a cause of action seeking a writ of mandate to compel MSJCC to comply with various provisions of FERPA regarding procedures for accessing, challenging, and altering

5

student records; (2) a cause of action for "TRO/Preliminary Injunction/Permanent Injunction"; (3) a cause of action for "fraud by identity theft and concealment" against Mozga and MSJCC; (4) a cause of action for violation of plaintiff's civil rights pursuant to Civil Code section 52.1 against Mozga and MSJCC; (5) a cause of action for intentional infliction of emotional distress against all defendants; and (6) a cause of action for negligence against all defendants.

Defendants demurred to the first cause of action seeking a writ of mandate and fourth cause of action for violation of civil rights pursuant to Civil Code section 52.1. The trial court sustained the demurrer to both causes of action, without leave to amend.

B. *Jury Trial of Legal Issues*

The legal issues presented in the operative pleading were tried first before a jury. Evidence was presented over the course of 11 days in which 10 witnesses testified. With respect to the cause of action for fraud, the jury returned a special verdict finding Mozga liable but also finding that Mozga was not acting within the course and scope of her employment and that MSJCC did not ratify Mozga's conduct. With respect to the cause of action for intentional infliction of emotional distress, the jury returned a special verdict in favor of defendants. Finally, with respect to the cause of action for negligence, the jury returned a special verdict finding all defendants liable. The jury awarded a total of

$250,000 in damages but also apportioned 10% fault to plaintiff for contributing to her injuries.[4]

C. *Court Decision on Equitable Issues*

After the jury returned a verdict, the parties stipulated to submit the equitable issues to the court without further presentation of evidence. As set forth in the operative pleading, plaintiff requested: (1) an injunction compelling defendants to "acknowledge that plaintiff bears no responsibility for the false FAFSA form and did not participate in its preparation"; (2) an injunction compelling defendants to "clear plaintiff's college record of any reference to the false FAFSA form that in any way implicates her as having any responsibility for its preparation"; and (3) an injunction "direct[ing] defendants to return the misappropriated money to the rightful owner(s) and provide proof to the Court, the taxpayers and plaintiff of having done so." In written briefing, plaintiff also requested an injunction compelling MSJCC to afford her a hearing and opportunity to contest any matters in her educational record as required by FERPA.

In a written statement of decision, the trial court summarized its view of the evidence and concluded that "[p]laintiff was a willing participant in the FAFSA alteration of which she claims to be a victim" and "agree[d] with the jury that . . . plaintiff bears responsibility in the present fact pattern." Specifically, the trial court observed that the evidence showed only three individuals—Mozga, plaintiff, and plaintiff's mother—had

---

[4] Specifically, the jury found that plaintiff had suffered $350 in past economic loss; $950 in future economic loss; $60,000 in past non-economic loss; and $188,700 in future non-economic loss. The jury apportioned 10% fault to plaintiff, 25% fault to Mozga, 25% fault to Willingham, and 40% fault to MSJCC.

7

access to plaintiff's FAFSA account, and there was no evidence to suggest Mozga had a motive to fraudulently obtain money solely for the benefit of plaintiff. In contrast, the trial court noted that plaintiff had a motive to participate in the fraud, observing that plaintiff's father appeared to be very controlling, plaintiff had no financial independence as an adult, and the alterations to plaintiff's FAFSA coincided with a time in which her family experienced some financial instability.

The trial court concluded that plaintiff was not entitled to any equitable relief. Specifically, the trial court concluded that: (1) an injunction requiring MSJCC to acknowledge plaintiff bore no responsibility or to alter educational records to that effect would be contrary to the jury's factual finding that plaintiff was partially at fault; (2) the balance of equities did not support an injunction requiring the alteration of educational records; (3) an injunction compelling the return of money to the federal government would be moot based upon the trial court's factual finding that the matter had already been resolved; and (4) plaintiff was not entitled to any form of equitable relief because she had already obtained a monetary award that adequately compensated her for her injuries.

D. *Judgment and Posttrial Motions*

A judgment was entered January 25, 2023, incorporating the jury's verdict and the trial court's statement of decision with respect to equitable relief.

On March 17, 2023, plaintiff filed a motion seeking an award of attorney's fees pursuant to Code of Civil Procedure section 1021.5. In support of the motion, plaintiff submitted (1) the declaration of her counsel setting forth the basis for his professional

background and the manner in which he calculated the amount of the attorney fee request; (2) declarations by plaintiff and her mother detailing why they believed litigation was necessary in this case; and (3) the declarations of more than 10 attorneys with professional or personal relationships with plaintiff's counsel offering their opinions that the amount requested by counsel in fees was reasonable for this type of case. Plaintiff argued that her litigation conferred substantial benefit to the public because it exposed a theft by a public employee, resulted in the termination of corrupt employees, and resulted in the return of public monies that would benefit other students. The trial court denied the motion concluding that, even if plaintiff was a successful party within the meaning of section 1021.5, she had not shown any of the other elements that would entitle her to an award of fees under the statute.

Plaintiff appeals from the judgment and the postjudgment motion denying her request for attorney's fees.

### III. DISCUSSION

A. *The Trial Court Did Not Err in Sustaining the Demurrer*

We turn first to plaintiff's contention that the trial court erred in sustaining the demurrer to the first cause of action seeking a writ of mandate to enforce various provisions contained within FERPA and the fourth cause of action for violation of her civil rights pursuant to Civil Code section 52.1. As we explain, we find no error in the record before us.

1. <u>General Legal Principles and Standard of Review</u>

"A demurrer tests the legal sufficiency of the factual allegations in a complaint and/or petition for writ of mandate." (*Siskiyou Hospital*, *Inc. v. County of Siskiyou* (2025) 109 Cal.App.5th 14, 38-39 (*Siskiyou Hospital*, *Inc.*).) " 'A ruling on a general demurrer is thus a method of deciding the merits of the cause of action on assumed facts without a trial.' " (*Morris v. JPMorgan Chase Bank*, *N.A.* (2022) 78 Cal.App.5th 279, 291-292 (*Morris*).)

"We apply two standards of review on appeal from a judgment of dismissal after a demurrer is sustained without leave to amend." (*Morris*, *supra*, 78 Cal.App.5th at p. 292.) "First, we review the operative complaint 'de novo to determine whether the complaint alleges facts sufficient to state a cause of action under any legal theory or to determine whether the trial court erroneously sustained the demurrer as a matter of law.' " (*Ibid.*) "Second, we determine 'whether the trial court abused its discretion by sustaining the demurrer without leave to amend.' [Citation.] Abuse of discretion is established when ' "there is a reasonable possibility the plaintiff could cure the defect with an amendment." ' " (*Id.* at pp. 292-293.)

In this appeal, plaintiff's opening brief fails to separately discuss whether the trial court abused its discretion by denying leave to amend. As such, we deem any such argument waived (*Golden Day Sch. v. Dep't of Educ.* (1999) 69 Cal.App.4th 681, 695, fn. 9 [arguments not separately discussed under separate heading deemed waived]) and proceed to consider only whether the allegations of the operative pleading were sufficient to state a cause of action as a matter of law.

2.  Plaintiff Failed To State a Cause of Action for Writ of Mandate

" 'Code of Civil Procedure section 1085, providing for [traditional] writs of mandate, is available to compel public agencies to perform acts required by law. [Citation.]  To obtain relief, a petitioner must demonstrate (1) no "plain, speedy, and adequate" alternative remedy exists; [citation] (2) " 'a clear, present, . . . ministerial duty on the part of the respondent' "; and (3) a correlative " 'clear, present, and beneficial right in the petitioner to the performance of that duty.' " ' " (*Siskiyou Hospital*, *Inc.*, *supra*, 109 Cal.App.5th at pp. 36-37.)  Here, the trial court sustained the demurrer after concluding that plaintiff failed to allege facts sufficient to establish a clear ministerial duty to act.  We find no error in this conclusion.

Specifically, plaintiff sought a writ of mandate to enforce various provisions of FERPA.  On appeal, plaintiff cites only to these provisions as the source of a mandatory duty.  However, "Congress enacted FERPA under its spending power to condition the receipt of federal funds on certain requirements relating to the access and disclosure of student educational records."  (*Gonzaga Univ. v. Doe* (2002) 536 U.S. 273, 278 (*Gonzaga Univ.*); *Rim of the World Unified School Dist. v. Superior Court* (2002) 104 Cal.App.4th 1393, 1398 ["FERPA conditions the availability of federal funds on conformance with its provisions."].)  " 'The statute takes a carrot-and-stick approach: the carrot is federal funding; the stick is the termination of such funding' " to educational institutions that fail to comply with its provisions.  (*BRV, Inc. v. Superior Court* (2006) 143 Cal.App.4th 742, 752.)

Understanding this context is crucial because the United States Supreme Court has

11

explained that spending power legislation of this type creates contractual rights between the federal government and the state rather than individually enforceable rights. (*Medina v. Planned Parenthood South Atlantic* (2025) 145 S.Ct. 2219, 2224 ["courts described federal grants as contracts, not commands" and "spending-power legislation is 'much in the nature of a contract' "]; see *McDonald v. Stockton Met. Transit Dist.* (1973) 36 Cal.App.3d 436, 441 ["The acceptance of a federal grant under terms and conditions authorized by Congress creates a binding contract."].) And it is well settled that " 'mandamus is not an appropriate remedy for enforcing a contractual obligation against a public entity.' " (*300 DeHaro Street Investors v. Department of Housing & Community Development* (2008) 161 Cal.App.4th 1240, 1254-1255; *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 806.) This is because the law imposes " ' "no special duty to carry out the terms of contracts or to refrain from breaches of contractual relations. [Public entities] are not singled out, as distinguished from other corporate entities or other individuals, as especially enjoined to observe contractual obligations . . . ." ' " (*300 DeHaro*, pp. 1254-1255.)

Thus, the FERPA statutes do not, in themselves, show the existence of a ministerial duty to perform any act.[5] To the extent FERPA imposes obligations on

---

[5] We observe that the California Supreme Court reached the same conclusion in a different procedural context in *Coast Community College Dist. v. Commission on State Mandates* (2022) 13 Cal.5th 800. In that case, several community college districts filed a claim with the Commission on State Mandates arguing that regulations that "specify various conditions the districts must satisfy to avoid the possibility of having their state aid withheld" created mandates to which they were entitled to be reimbursed. (*Id.* at p. 806.) In rejecting this argument, the California Supreme Court explained that "the

*[footnote continued on next page]*

MSJCC, such obligations are contractual in nature and do not constitute the type of clear, ministerial duty that is properly the subject of a writ of mandate. Where the pleading does not identify a clear, ministerial duty to act, the trial court does not err in sustaining a demurrer to a cause of action for writ of mandate.

3. Plaintiff Failed To State a Cause of Action for Violation of Civil Rights

"The Bane Act provides for liability for the interference or attempted interference with a person's state or federal constitutional rights 'by threat, intimidation, or coercion.' " (*Wiley v. Kern High School Dist.* (2024) 107 Cal.App.5th 765, 774 (*Wiley*).) "To plead a cause of action under the Bane Act, the plaintiff must show '(1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." (*Wiley*, at p. 774; *Animal Protection & Rescue League, Inc. v. County of Riverside* (2025) 111 Cal.App.5th 914, 920.) We conclude that the trial court did not err in sustaining the demurrer to this cause of action for two, independent reasons.

First, the SAC fails to adequately allege an underlying state or federal constitutional or legal right. Plaintiff alleged that defendants' actions interfered with her " 'property interest in her rights as a student,' " her liberty interest in maintaining a good

_____

districts are not legally obligated to adopt the standards described in the regulations, but rather face the risk of potentially severe financial consequences if they chose not to do so. Because the regulations induce rather than obligate compliance, legal compulsion is inapplicable." (*Id.* at p. 807.) And while the case addressed the doctrine of legal compulsion in the context of a claim before the Commission on State Mandates, our Supreme Court specifically explained that the concept of legal compulsion required finding "a mandatory, legally enforceable duty to obey" "similar to the showing necessary to obtain a traditional writ of mandate." (*Id.* at p. 815.)

13

name and reputation, and her rights under FERPA. However, "[n]o United States or California Supreme Court opinion holds a student has a property or liberty interest in continued enrollment in good standing in an academic program." (*Lachtman v. Regents of University of California* (2007) 158 Cal.App.4th 187, 199.)[6] Likewise, "[a]n 'interest in reputation alone is not a constitutionally protected liberty interest.' [Citation.] Even 'serious damage to reputation alone is insufficient to constitute deprivation of a constitutionally protected liberty or property interest . . . .' " (*Los Angeles Police Protective League v. City of Los Angeles* (2014) 232 Cal.App.4th 136, 149; *Caloca v. County of San Diego* (1999) 72 Cal.App.4th 1209, 1218-1220 [reputational damage does not amount to a constitutional violation].) Finally, the United States Supreme Court has unambiguously held that FERPA does not create any personally enforceable rights. (*Gonzaga Univ.*, *supra*, 536 U.S. at pp. 289-290; *Medina*, *supra*, 145 S.Ct. at p. 2224 [Spending legislation does not create any individual rights absent "clear rights-creating language."].) Thus, we conclude that plaintiff has failed to identify a violation of an underlying constitutional right, which is a necessary element of any claim under Civil Code section 52.1.

---

[6] The United States Supreme Court has "recognized that where state law has created a student's entitlement to a *public education*, that entitlement constitutes a property interest that is constitutionally protected." (*Doe v. Occidental College* (2019) 37 Cal.App.5th 1003, 1018, fn. 2; *Goss v. Lopez* (1975) 419 U.S. 565, 573-574, 576.) However, California authorities have consistently held that the right to education under the state constitution (*Serrano v. Priest* (1971) 5 Cal.3d 584) does not encompass "a fundamental right to college and/or community college education" (*Gurfinkel v. Los Angeles Community College Dist.* (1981) 121 Cal.App.3d 1, 5; *Levi v. O'Connell* (2006) 144 Cal.App.4th 700, 705-710; *Doe*, at p. 1013 [alleged interference with college enrollment "do not ' "involve[e] a fundamental vested right" ' "]).

Second, the SAC fails to allege any threat, intimidation or coercion by any of the defendants.[7] "The 'threats, intimidation, or coercion' requirements—the 'egregiousness' element—were intended to prevent the Bane Act from extending to ordinary tort claims." (*Wiley*, *supra*, 107 Cal.App.5th at p. 775.) Our review of the SAC reveals no allegation that any defendant threatened, intimidated, or coerced plaintiff at any relevant time. And while plaintiff's arguments on appeal focus largely on the trial court's use of the term "violence" in conducting its analysis, plaintiff has not identified any factual allegations in the operative pleading that could support the requisite element of a threat, intimidation or coercion directed at plaintiff. Thus, we conclude that even if plaintiff had properly alleged interference with a constitutional right, plaintiff failed to adequately allege the requisite threats, intimidation or coercion necessary to support recovery under Civil Code section 52.1, and the trial court did not err in sustaining the demurrer to this claim.

B. *Plaintiff Has Forfeited Her Challenge to the Jury's Findings*

Plaintiff also contends that the jury "erred as a matter of law" with respect to its finding that MSJCC did not ratify Mozga's conduct. We conclude that this argument has

---

[7] Plaintiff correctly notes that what is sufficient to constitute the requisite threat, intimidation, or violence is unsettled. (See *Shoyoye v. County of Los Angeles* (2012) 203 Cal.App.4th 947, 959 ["[W]here coercion is inherent in the constitutional violation alleged," the "statute requires a showing of coercion independent from the coercion inherent in the [constitutional violation]."] and *Cornell v. City & County of San Francisco* (2017) 17 Cal.App.5th 766, 799-800 ["Nothing in the text of the statute requires that the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged."].) However, it is unnecessary to address this dispute to resolve the claims in this appeal. Both lines of cases recognize that there must be some action amounting to a threat, intimidation, or coercion in order to pursue a claim under Civil Code section 52.1, and the SAC contains no such allegation in this case.

been forfeited and, even in the absence of forfeiture, plaintiff has not shown error warranting reversal.

Generally, a jury's factual findings are reviewed for substantial evidence. (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 500-501.) Additionally, " '[t]he substantial evidence standard of review takes on a unique formulation where, as here, "the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals." ' [Citation.] Under these circumstances, ' " ' "the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' " ' " (*Symons Emergency Specialties v. City of Riverside* (2024) 99 Cal.App.5th 583, 597 (*Symons*).)

However, on appeal, plaintiff argues that the jury's finding should be reviewed de novo, and presents no argument as to why the evidence was uncontradicted or unimpeached and of such character as to compel a finding in her favor. " "" '[A]rguments should be tailored according to the applicable standard of appellate review,' " ' and ' "[f]ailure to acknowledge the proper scope of review is a concession of lack of merit." ' " (*Symons*, *supra*, 99 Cal.App.5th at p. 597 [forfeiture for failure to tailor arguments to correct standard of review]; *Ewald v. Nationstar Mortgage*, *LLC* (2017) 13 Cal.App.5th 947, 948 [same].) Thus, plaintiff's failure to identify and tailor her arguments to the correct standard of review forfeits the claim of error on appeal.

16

Even in the absence of forfeiture, we would conclude that plaintiff has not met her burden on appeal to show error warranting reversal. " ' "The theory of ratification is generally applied where an employer fails to investigate or respond to charges that an employee committed an intentional tort. . . . Whether an employer has ratified an employee's conduct is generally a factual question." ' " (*Thomas v. Regents of University of California* (2023) 97 Cal.App.5th 587, 619.) Here, even assuming the evidence identified in plaintiff's opening brief was entirely uncontested at trial, there was no direct evidence of ratification. Instead, the evidence relied on by plaintiff consists only of the failure of MSJCC to take sufficient corrective action, giving rise to an inference of ratification. And "where ratification is sought to be implied from conduct or deduced from acts of alleged acquiescence," it is "especially true" that "the question is one for the jury." (*Rhee v. L.K. Small Co.* (1927) 83 Cal.App. 339, 344.) "The jury is not compelled to draw the inference . . . , even in the absence of contrary evidence and may refuse to do so. . . . [W]hether the inference shall be drawn, in any given case, is a question of fact for the jury." (*Blank v. Coffin* (1942) 20 Cal.2d 457, 461.)

Thus, where plaintiff's claim of ratification relies entirely on convincing the jury to draw certain inferences in her favor based upon circumstantial evidence, it is not of such character or weight as to compel a finding in plaintiff's favor. The jury was entitled to reject the credibility of plaintiff's evidence and decline to draw the inferences urged by plaintiff, even in the absence of contradictory evidence and plaintiff has not established error warranting reversal, even in the absence of forfeiture.

C. *The Trial Court Did Not Abuse Its Discretion in Denying Injunctive Relief*

Plaintiff also claims the trial court erred in denying her requests for injunctive relief. " 'The grant or denial of a permanent injunction rests within the trial court's sound discretion and will not be disturbed on appeal absent a showing of a clear abuse of discretion.' [Citations.] The burden is on the party challenging the ruling to demonstrate such abuse." (*Grail Semiconductor, Inc. v. Mitsubishi Electric & Electronics USA, Inc.* (2014) 225 Cal.App.4th 786, 801 (*Grail*).) However, "[t]he abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712.) As we explain, we find no abuse of discretion in the record before us.

The nature of the injunctive relief sought by plaintiff has shifted throughout the course of litigation. In the operative pleading, plaintiff sought injunctions to (1) compel defendants to "acknowledge that plaintiff bears no responsibility for the false FAFSA form and did not participate in its preparation"; (2) compel defendants to "clear plaintiff's college record of any reference to the false FAFSA form that in any way implicates her as having any responsibility for its preparation"; and (3) "direct defendants to return the misappropriated money to the rightful owner(s) and provide proof to the Court, the taxpayers and [plaintiff] of having done so." In her brief following the trial of legal issues, plaintiff purported to withdraw her first request but also sought to recast her

18

second request as a request for an administrative hearing to challenge representations in her educational record under FERPA.

    1.  Requests for Injunctive Relief Pleaded in Complaint

With respect to the first two requests, the trial court expressly relied on the jury's findings of fact to deny injunctive relief.  Specifically, the jury returned a special verdict finding that plaintiff was negligent, her negligence contributed to her alleged injuries, and apportioned 10% fault to plaintiff.  Plaintiff has not challenged these findings on appeal. The trial court correctly observed that it was bound by the jury's factual findings. (*Hoopes v. Dolan* (2008) 168 Cal.App.4th 146, 159 [" '[W]here the legal issues are tried first, the judge cannot ignore the jury's verdict and grant equitable relief inconsistent with the jury's findings.' "].)  Because an order compelling defendants to "acknowledge plaintiff bears no responsibility" or "clear plaintiff's college record of any reference . . . that . . . implicates her of having any responsibility" would have been inconsistent with the jury's factual findings, the decision to deny these requests for injunctive relief cannot be considered arbitrary or capricious such that it would constitute an abuse of discretion.

With respect to the third request, the trial court made a factual finding that the money had already been returned.  In reaching this conclusion, the trial court specifically cited to witness testimony presented at the time of trial that "the FAFSA monies were reversed and zeroed out with the Federal government."  On appeal, plaintiff does not dispute that this testimony was presented but argues that the strength of other evidence and the lack of documentation warranted a contrary finding.  However, when reviewing an order granting or denying injunctive relief for abuse of discretion, "[w]e accept the

19

trial court's factual findings if supported by substantial evidence" (*Caru Society for Prevention of Cruelty to Animals v. Anthony* (2025) 113 Cal.App.5th 751, 759) and, "[u]nder the substantial evidence standard, the testimony of even one witness may support a finding based thereon" (*Newman v. Casey* (2024) 99 Cal.App.5th 359, 375). Because the trial court's factual finding that the money had already been returned is supported by substantial evidence, we cannot conclude that the decision to deny an injunction ordering return of the money constituted an abuse of discretion. (*Scripps Health v. Marin* (1999) 72 Cal.App.4th 324, 332 ["[A] change in circumstances at the time of the hearing, rendering injunctive relief moot or unnecessary, justifies denial of the request."].)[8]

2. Request for an Injunction Compelling Compliance with FERPA

With respect to plaintiff's belated claim for an injunction requiring MSJCC to comply with various provisions of FERPA, we also conclude that denial of this request was not an abuse of discretion and could not have been prejudicial.

---

[8] Even assuming error, we question whether plaintiff could establish prejudice warranting reversal. And while the parties have not briefed the issue, we struggle to see how plaintiff could have standing to even seek an injunction to enforce the obligations of MSJCC with respect to monies owed to the federal government—a nonparty to this action. (*United Farmers Agents Assn., Inc. v. Farmers Group*, *Inc.* (2019) 32 Cal.App.5th 478, 488 [" ' "A plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." ' "]; *People ex rel. Becerra v. Superior Court* (2018) 29 Cal.App.5th 486, 499 [" 'As a general rule, a third party does not have standing to bring a claim asserting a violation of someone else's rights.' "].) It is not clear that plaintiff could ever obtain this specific injunctive relief, even if the matter were remanded for further proceedings.

First, we disagree with plaintiff's contention that reversal is warranted because the trial court failed to specifically address her FERPA request in its statement of decision. While the trial court specifically addressed certain arguments in its statement of decision, it also concluded that plaintiff was not entitled to *any* form of equitable relief because she had an adequate legal remedy. This was sufficient, as it adequately stated reasons upon which the judgment rests. (*Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1124-1125 ["A statement of decision need not address all the legal and factual issues raised by the parties. Instead, it need do no more than state the grounds upon which the judgment rests . . . ."].) Thus, the trial court's purported failure to specifically address plaintiff's FERPA arguments does not show an abuse of discretion.

Second, we cannot conclude that the trial court's conclusion that plaintiff had an adequate legal remedy was arbitrary or capricious. "In ordinary tort actions, injunctive relief is generally available only if legal remedies (e.g., monetary compensation) are inadequate." (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 838-839; *Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1352 [" '[T]he extraordinary remedy of injunction' cannot be invoked without showing the likelihood of irreparable harm."].) As acknowledged by plaintiff on appeal, a FERPA hearing is intended to permit a student to challenge representations in her educational records. Presumably, the ultimate purpose of this hearing is to obtain removal of disputed material that could cause plaintiff future reputational harm. However, plaintiff had already sought and the jury had already awarded monetary damages for future non-economic harm. Because plaintiff had already obtained a monetary award intended to compensate her for the very harm which a

21

FERPA hearing might also redress, the trial court could reasonably conclude that monetary damages were an adequate remedy. (*Grail*, *supra*, 225 Cal.App.4th at p. 801 [where monetary damages are available, the plaintiff must show that "the facts in [the] record . . . compel a conclusion as a matter of law that damages will be an inadequate remedy" in order to establish that denial of an injunction constituted an abuse of discretion].)

Third, even if we assumed the trial court abused its discretion in some manner, any such error could not have been prejudicial with respect to the request for an injunction to enforce FERPA. (*TriCoast Builders, Inc. v. Fonnegra* (2024) 15 Cal.5th 766, 786 ["The constitutional constraint, which applies in civil as well as criminal cases, 'generally "prohibits a reviewing court from setting aside a judgment due to trial court error unless it finds the error prejudicial." ' "]; Cal. Const., art. VI, § 13.) " 'Injunctive relief is a remedy, not a cause of action. [Citation.] A cause of action must exist before a court may grant a request for injunctive relief.' " (*Ivanoff v. Bank of America*, *N.A.* (2017) 9 Cal.App.5th 719, 734; *Applied Medical Distribution Corp. v. Jarrells* (2024) 100 Cal.App.5th 556, 573 [" ' "A permanent injunction is merely a remedy for a proven cause of action. It may not be issued if the underlying cause of action is not established." ' "].) As relevant here, the United States Supreme Court has unambiguously held that there is no private cause of action to enforce FERPA, observing that the statutory provisions "entirely lack the sort of 'rights-creating' language critical to showing the requisite congressional intent"; "speak only to the Secretary of Education" with respect to enforcement; "speak only in terms of institutional policy and practice"; and provides for a

22

specific mechanism of enforcement by the Secretary of Education. (*Gonzaga Univ*. v.

*Doe* (2002) 536 U.S. 273, 287-288.)  Based upon this reading of the statutory text, the

Supreme Court concluded that "it is implausible to presume that the same Congress . . .

intended private suits to be brought before thousands of federal- and state-court judges . .

. ." (*Id.* at p. 290.)

Federal Circuit courts have reached similar conclusions in a variety of contexts.

(*Frazier v. Fairhaven Sch. Comm.* (2002) 276 F.3d 52, 68 ["FERPA expressly authorizes

the Secretary of Education—and only the Secretary—to take 'appropriate actions' to

enforce its provisions."]; *Cenzon-DeCArlo v. Mount Sinai Hosp.* (2010) 626 F.3d 695,

699 [Because FERPA does not create a private right of action, plaintiff is not entitled to

seek injunctive relief for its enforcement.].)

Absent an underlying cause of action to enforce FERPA in the first instance, there

is no right to seek injunctive relief as a remedy.  Thus, regardless of the trial court's

reasons for denying this specific request for injunctive relief, plaintiff could not have

been prejudiced such that reversal is warranted.

3.  Request To "Strike" Language from the Trial Court's Statement of Decision

Finally, we decline plaintiff's request for this court to "strike" language from the

trial court's written ruling or statement of decision because the language includes "flawed

conclusions" by the trial court.  " 'It is a settled appellate principle that reviewing courts

uphold judgments or orders if correct for any reason, regardless of the correctness of its

grounds as " ' "[i]t is judicial action and not judicial reasoning which is the subject of

review . . . ." ' " ' " (*Bruno v. Hopkins* (2022) 79 Cal.App.5th 801, 816; *Howard v.*

*Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 443.)  And "[w]e generally do not address issues whose resolution is unnecessary to the disposition of an appeal." (*Antounian v. Louis Vuitton Malletier* (2010) 189 Cal.App.4th 438, 455.)  Further, we do not rewrite the trial court's ruling.  The determination of the case in the first instance is for the trial court.  Upon appeal, we review that ruling, as it was given, for prejudicial error.

Because we have already considered each of plaintiff's claims of error on the merits and concluded that plaintiff has not shown a basis for reversal of the judgment, we decline to entertain plaintiff's request that we comb the record to correct various alleged errors in the trial court's written rulings, "even if this Court rules against reversing the rulings."

D. *The Trial Court Did Not Abuse Its Discretion in Denying Attorney's Fees*

Plaintiff has also appealed from the trial court's postjudgment order denying her request for attorney's fees.  We find no abuse of discretion in the trial court's decision.

Specifically, plaintiff sought an award of attorney's fees pursuant to Code of Civil Procedure section 1021.5.  " 'The Legislature adopted section 1021.5 as a codification of the private attorney general doctrine of attorney fees . . . .  Under this section, the court may award attorney fees to a "successful party" in any action that "has resulted in the enforcement of an important right affecting the public interest if:  (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be

24

paid out of the recovery, if any . . . .” ’ ” (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 565; *City of San Clemente v. Department of Transportation* (2023) 92 Cal.App.5th 1131, 1148.) “Generally, a trial court’s ruling on a request for attorney fees under section 1021.5 is reviewed for abuse of discretion.” (*Children & Families Com. of Fresno County v. Brown* (2014) 228 Cal.App.4th 45, 57; *City of San Clemente*, at p. 1149.)

Here, the trial court denied plaintiff’s motion for attorney’s fees after concluding that plaintiff had not shown that (1) the case resulted in an important right affecting the public interest; (2) a significant benefit was conferred upon the general public or a large class of persons; (3) private enforcement was necessary; (4) the financial burden of private enforcement rendered an award necessary; or (5) the interests of justice warranted an award of fees. Plaintiff challenges each of these findings on appeal. However, we need not discuss each finding in detail because we conclude the trial court correctly found that the litigation did not result in a significant benefit conferred upon the general public or a large class of persons.

In ruling on a motion for attorney’s fees pursuant to Code of Civil Procedure section 1021.5, a trial court “ ‘ “ ‘must realistically assess the litigation and determine from a practical perspective whether the statutory criteria have been met.’ ” ’ ” (*Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.* (2019) 36 Cal.App.5th 970, 980.) In this case, the plaintiff failed to prevail on any of her requests for mandamus or injunctive relief. Instead, she prevailed only on her causes of action based upon traditional tort theories of fraud and negligence and obtained only

25

monetary compensation for her individual damages as a result. Generally, this is not the type of outcome that confers any benefit to the public. (*Leiserson v. City of San Diego* (1988) 202 Cal.App.3d 725, 738 ["[W]here only a litigant's personal economic interests are advanced by a lawsuit, fees may not be awarded since the litigation does not significantly benefit a large class of persons."]; *Royball v. Governing Bd. Of Salinas City Elementary School* Dist. (2008) 159 Cal.App.4th 1143, 1150-1151 ["[W]here the litigation primarily advanced petitioners' personal economic interests, we cannot find a reasonable basis for the conclusion that a significant benefit was conferred on the public or a large class of persons."].)

Plaintiff argues that her litigation exposed a theft by a public employee, proved a coverup at the highest level of the college, exposed numerous crimes, generated publicity and resulted in the return of stolen public funds. However, " '[b]ecause the public always has a significant interest in seeing that laws are enforced, it always derives some benefit when illegal private or public conduct is rectified. Nevertheless,' " the " 'statute specifically provides for an award only when the lawsuit has conferred "a significant benefit" on "the general public or a large class of persons." ' " (*Baxter v. Salutary Sportsclubs*, *Inc.* (2004) 122 Cal.App.4th 941, 945.) And we are unpersuaded that any of the facts identified by plaintiff are sufficient to show a significant benefit to the public in the context of this case.

As the trial court noted, there was never any evidence that Mozga engaged in any similar fraud in relation to any other student at MSJCC. Plaintiff has not challenged this finding on appeal. Indeed, prior to trial plaintiff conceded there was no evidence that

26

anyone else was subject to a similar scheme and represented that no such evidence would be presented at trial. Thus, even accepting plaintiff's characterization that her litigation revealed a theft, public coverup, disclosed crimes, generated publicity, and resulted in some restitution, it remains uncontested that all of these facts arose from a single set of transactions unique to plaintiff.

Because the litigation resulted in vindication of only the personal financial interests of plaintiff and because any corrective action that purportedly resulted from the litigation addressed a situation that was not widespread, but unique to plaintiff, it was not unreasonable for the trial court to conclude that plaintiff failed to meet her burden to show that her litigation conferred a significant benefit to the general public or a large class of persons. And because a party seeking fees under Code of Civil Procedure section 1021.5 is required to establish all of the essential elements necessary for an award of fees (*Bui v. Nguyen* (2014) 230 Cal.App.4th 1357, 1377), the failure to establish one essential element renders it unnecessary to "consider whether [the moving party] satisfied the other criteria upon which the court denied the motion." (*Children & Families Com. of Fresno County v. Brown*, *supra*, 228 Cal.App.4th at p. 63.)

## IV.  DISPOSITION

The judgment and postjudgment order denying plaintiff's request for attorney's fees are affirmed.  Respondents to recover their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

We concur:


McKINSTER
Acting P. J.


RAPHAEL
J.